[Civ. No. 11069. Second Appellate District, Division One.—April 21, 1937.]

MARTIN BLANK et al., Appellants, v. THE OLCOVICH SHOE CORPORATION et al., Respondents.

[Civ. No. 11095. Second Appellate District, Division One.—April 21, 1937.]

MARTIN BLANK et al., Respondents, v. THE OLCOVICH SHOE CORPORATION, Appellant.

Desser & Bokofsky, Percy M. Bokofsky and David I. Lippert for Plaintiffs and Appellants.

George Appell and Harry A. Mock for Defendant and Appellant.

DORAN, J.—This action for money had and received is predicated upon the proposition that 746 shares of the common stock of The Olcovich Shoe Company, of the value of $7,460, had been sold to plaintiffs without a permit having been obtained therefor by said The Olcovich Shoe Company, and that 254 shares of the common stock (of the same company) of the value of $2,540, had been sold by said corporation to plaintiffs for said sum in violation of certain terms of the permit of the commissioner of corporations.

It appears from the record that Emil Olcovich was the founder of the corporation bearing his name, and for many years prior to the litigation herein, he and his brother, Albert Olcovich, were engaged in the wholesale and retail shoe business in southern California. The plaintiffs, Martin Blank and Minette Blank, are husband and wife; Mrs. Blank and

plaintiff Albert Meister, who are brother and sister, are also nephew and niece of Emil and Albert Olcovich.

Before the commencement of this litigation, Blank and Meister were employees of the Olcovich corporations and Meister was a stockholder in The Olcovich Shoe Company. Blank's employment commenced in 1925. During the year 1927, Blank and The Olcovich Shoe Company conducted, as partners, a retail store in Los Angeles, known as Blank's Booterie. Blank was the store manager at a salary of $50 per week, said sum being paid from the partnership funds. While the partnership arrangement just referred to was in force, plaintiffs, being desirous of becoming stockholders in The Olcovich Shoe Company, agreed with either Emil or Albert Olcovich to purchase 1,000 shares of the common capital stock of the company for $10,000; payment therefor was to be as follows: that Blank would sell to the corporation his partnership interest in Blank's Booterie for $2,540, and receive credit for that sum on the purchase price of said 1,000 shares of common stock of $10,000, and the sum of $7,460 should be paid in cash to said company. This agreement was effectuated, and two certificates of stock for 500 shares each were issued: one to Martin and Minette Blank and one to Albert Meister.

It was arranged that Blank should subscribe for 254 shares of what was designated "Employees' Stock". The other 746 shares were made up of a block of stock that theretofore had been sold to the corporation by one of its stockholders. The cash payment was made as agreed. Blank and Meister continued in the employ of The Olcovich Shoe Company thereafter.

In December, 1931, The Olcovich Shoe Company, at the instance of one of its creditors, was placed under the control of receivers in equity, and pursuant to an order of the United States District Court at Los Angeles, C. A. Wise and Emil Olcovich were named as receivers. Blank and Meister thereafter continued in the employ of the receivers. On August 12, 1932, The Olcovich Shoe Company filed a voluntary petition in bankruptcy, and on said date was adjudicated a bankrupt.

Before the adjudication in bankruptcy, however, a California corporation known as the Olco Shoe Company was or-

ganized. In the course of the bankruptcy proceedings the referee in bankruptcy gave notice of an intended sale of the assets of the bankrupt corporation,—The Olcovich Shoe Company. At an open sale the assets of The Olcovich Shoe Company were purchased by the Olco Shoe Company under the terms of a certain offer which was accepted by the referee in bankruptcy and thereafter confirmed. The offer of purchase was, in part, as follows: ''The undersigned, Olco Shoe Co., does hereby offer to purchase from you as Trustee in Bankruptcy of the Olcovich Shoe Co., all of the assets of the Olcovich Shoe Co. and of the estate of the Olcovich Shoe Co. in bankruptcy, including all merchandise, furniture, fixtures and equipment, accounts receivable, automobiles, trucks, choses in action, debts due by other parties to the Olcovich Shoe Co., including claims of any kind or nature, liquidated or unliquidated, cash on hand, stocks, bonds and all other assets of every name and nature, excepting leases and leasehold interests in real estate, for the consideration hereinafter stated and upon the terms and condition set forth.''

About January, 1933, upon the completion of the reorganization, plaintiffs accepted an offer of the Olco Shoe Company to purchase shares thereof in proportion to the number of shares they theretofore had owned in The Olcovich Shoe Company.

Thereafter, on October 26, 1934, plaintiffs Martin Blank and Minette Blank served notice of rescission on defendants of the purchase of the original 500 shares of the common stock of The Olcovich Shoe Company, basing the rescission on the grounds that said company had not applied for or secured from the commissioner of corporations permission or authority to issue or sell said stock and that for said reason said sale was void. On December 31, 1934, plaintiff Meister served a similar notice based on the same grounds with reference to the 500 shares held by him. It should be noted here that the sale of this stock took place in June, 1929, and the action herein was commenced in June, 1935. Before the litigation herein was commenced the name of the Olco Shoe Company was changed to The Olcovich Shoe Corporation.

The court found in substance that the sale of the 254 shares of ''Employees' Stock'' was void, as the terms of a certain

supplemental permit to sell said stock were not complied with by said The Olcovich Shoe Company, in that no offer to sell said stock had theretofore been made by said corporation to its employees before the sale thereof to plaintiffs, and that plaintiffs were not employees of said The Olcovich Shoe Company at the time of said sale; but the court further found that the sale of said 746 shares was in compliance with the permit issued by the corporation commissioner and was valid. In addition, a finding was made (finding No. III), ''That said The Olcovich Shoe Corporation succeeded, acquired all the rights and assets of, and assumed all the duties and liabilities of, the said The Olcovich Shoe Company, except its leases, and in all respects became, and at all of the times has been, identical with the said The Olcovich Shoe Company.''

The court held against defendants with respect to several special defenses interposed, one of which was the statute of limitations, and rendered judgment in favor of plaintiffs Martin Blank and Minette Blank in the sum of $2,791.85. The court further decreed that as between the defendants and plaintiff Albert Meister, plaintiff Albert Meister take nothing.

The plaintiffs, and defendant The Olcovich Shoe Corporation, appeal from the judgment.

Plaintiffs, as appellants, assert three specifications of error: namely, (1) that the court erred in concluding that the sale of the 746 shares was made in conformity to the permit of the commissioner of corporations, (2) in concluding that plaintiffs were not entitled to judgment against Emil and Albert Olcovich personally, and (3) that plaintiffs were entitled to interest from the date of rescission only, rather than from the date of the sale of said stock.

Defendant, The Olcovich Shoe Corporation, as appellant, contends that the court erred in its conclusion that said The Olcovich Shoe Corporation was the successor to The Olcovich Shoe Company, and as such was responsible in damages for the acts of its predecessor for the alleged sale of stock in violation of a permit of the corporation commissioner; that the finding above quoted, to wit, ''That said The Olcovich Shoe Corporation succeeded, acquired all the rights and assets of, and assumed all the duties and liabilities of, the said The Olcovich Shoe Company, except its leases, and in all respects

became, and at all of the times has been, identical with the said The Olcovich Shoe Company'' is not supported by the law and the evidence. It is contended, further, that finding of fact No. IV, to the effect that said ''Employees' Stock'' was not sold for cash and was sold without first having been offered for sale to the employees, in violation of the permit of the corporation commissioner, is not supported by the evidence.

 In reply to the contention of appellant, The Olcovich Shoe Corporation, that there is no evidence in the record to support finding No. III, respondents Blank and Meister argue that such evidence is to be found in the form of an inference based upon several circumstances, namely, the similarity of names, the identity of the directorate, the bankruptcy proceedings followed by the purchase and sale of the assets, except its leases, of the one corporation by the other, and the offer of stock in the new corporation to the stockholders of the old at a nominal value. That an inference founded on a fact legally proved may be sufficient in law to support a finding, there can be no question, and it cannot be said that the evidence is insufficient to support the finding in this regard. With reference to the question of liability, there is an abundance of authority to support the claim that under certain circumstances corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old. Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation. (*Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 Pac. 780]; *Strahm* v. *Fraser Studios*, 32 Cal. App. 447 [163 Pac. 680].) It should be noted that these authorities and many others to the same effect defended the rights of actual creditors. The plaintiffs, appellants in the instant case, at all times until the notice of rescission was served, were merely possible, potential, contingent or *quasi* creditors. Their position, in this respect, so far as the new or the old corporation was concerned, was conditional; that is to say, whether they would be creditors depended entirely upon their election to become such. But whether the liability of the old

corporation attached and the debt accrued *ab initio* at the time of the alleged illegal sale of stock, or whether some act by the purchaser in the nature of a demand, was necessary to complete a process that would mature the debt and fix the liability, is of no consequence, for the authorities appear uniform on the proposition that under the circumstances presented by the record herein, the new corporation, when found to be but a continuation of the old, is liable regardless of any distinction as to the character of the creditors or the nature of the debt.

The weight of authority, holding otherwise, refutes the claim of appellant, The Olcovich Shoe Corporation, that the so-called ''Employees' Stock'' was sold for cash within the meaning of the Corporate Security Act. The courts have hitherto declared with respect to this subject that corporate stock '' . . . is required to be issued and disposed of in strict conformity with the permit granted for that purpose by the corporation commissioner''. (*Parrish* v. *American Ry. Emp. Pub. Corp.*, 83 Cal. App. 298, 302 [256 Pac. 590].) To the same effect is the ruling in *Domenigoni* v. *Imperial Live Stock etc. Co.*, 189 Cal. 467 [209 Pac. 36], and *Mannion* v. *Baldwin*, 217 Cal. 600 [20 Pac. (2d) 678].

Plaintiffs, as appellants, rely upon the judgment roll and in effect simply urge that, with respect to the three specifications of error heretofore mentioned, the judgment of the trial court should have been in accord with plaintiffs' contentions, and that plaintiffs, with regard to the issues therein involved, should have prevailed.

An appellate tribunal is in no position to review the mental processes of the trial judge, and will assume, in the absence of a showing to the contrary (which is the state of the record herein), that the findings are supported by the evidence and the conclusions of law are in accord with the findings. The trial court's conclusion that plaintiffs were entitled to interest only from the date of rescission is in accord with well-established law. (*Hayt* v. *Bentel*, 164 Cal. 680 [130 Pac. 432]; *Hellman* v. *Merz*, 112 Cal. 661 [44 Pac. 1079]; *Wilson* v. *Rigali & Veselich*, 138 Cal. App. 760 [33 Pac. (2d) 455]; *Knight* v. *Bentel*, 39 Cal. App. 502 [179 Pac. 406]; *Shirreffs* v. *Alta Canyada Corp.*, 8 Cal. App. (2d) 742 [48 Pac. (2d) 55]; *McDevitt* v. *Butte City Ranch*, 7 Cal. App. (2d) 252 [46 Pac. (2d) 290].)

The foregoing disposes of the questions involved in this appeal as recited in the opening briefs of the respective appellants.

The judgment in all respects appealed from is affirmed.

York, J., concurred.

Houser, P. J., dissented.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 13, 1937.